## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| **HENRY JAMES WIMBERLY, JR.** | |
| **PLAINTIFF,** | |
| **V.** | **CIVIL ACTION FILE NO.:** |
| | **1:09-cv-00172-WLS-TQL** |
| **STATE OF GEORGIA, DOUGHERTY COUNTY JAIL, LT. DEAN F. GORE, LT. ERIC MILLER, SHERIFF SPROUL, PRISON HEALTH SERVICES INC., MAJOR DAN HAGGERTY, DR. LINDA WALDEN, PRISON HEALTH SERVICES** | |
| **DEFENDANTS.** | |

## BRIEF IN SUPPORT OF PHS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW**, Prison Health Services, Inc. ("PHS") and Dr. Linda Walden ("Dr. Walden") (collectively, "PHS Defendants"), Defendants in the above styled case, and file this, their Brief in Support of their Motion for Summary Judgment, respectfully showing as follows:

## I.   PROCEDURAL HISTORY

On November 18, 2009, Plaintiff filed a complaint and an *in forma pauperis* application.  [Doc. Nos. 1&2].  Plaintiff has a long history of filing lawsuits—over

twenty; therefore, the Magistrate directed Plaintiff to file a supplemental complaint addressing whether he was in imminent danger of serious injury. [Doc. No. 6, Ord. to file Suppl. Compl. at pp. 2-3]. Based on filings of the Plaintiff alleging such serious injury, the Court allowed his case to proceed and allowed Plaintiff to amend to add the PHS Defendants as defendants. [Doc. Nos. 8 & 13]. On March 17, 2010, Plaintiff filed a Motion for Summary Judgment [Doc. No. 23]. On May 3, 2010, the PHS Defendants filed their Answer along with their Response to Plaintiff's Motion for Summary Judgment.

## II.     FACTUAL BACKGROUND

Plaintiff was a prisoner at the Dougherty County Jail ("DCJ"). [Doc. No. 1, Pl.'s Compl. "I. General Information"]. Plaintiff filed a 42 U.S.C. § 1983 action against PHS Defendants along with other several defendants alleging that he received inadequate medical care while incarcerated at DCJ. Id. at "V. Statement of Claim (continued)." It appears from Plaintiff's Complaint that he is alleging that he received inadequate medical care for the entire duration of his incarceration at DCJ—beginning on May 19, 2009. Id.

A.     *Plaintiff's Relevant Medical History at DCJ:*

Plaintiff alleges that he has not received adequate medical care, including testing and treatment, for the following conditions and ailments: an enlarged heart; enlarged prostate—which might denote prostate cancer; chronic high blood

2

pressure; possible cancerous cyst on the liver; possible cancerous cyst or tumor on the kidney; lower back and left knee pain; burning pain on his left side in kidney or liver; and left arm and leg numbness.  [Doc. No. 7, Motion to Supplement and Clarify Claim at pp. 2-5].

Defendant, Dr. Walden, is a licensed medical doctor in the State of Georgia, and until December 2009, Dr. Walden was an employee of PHS providing medical care to inmates incarcerated at DCJ (Ex. 1, Affidavit of Walden, ¶¶ 2-3). One of the inmates to whom Defendant provided medical care is Henry James Wimberly, Plaintiff in the above referenced suit. Id. at ¶ 3.

On May 19, 2009, Plaintiff's first day of incarceration at DCJ, PHS conducted an Intake Receiving and Screening to assess Plaintiff's current medical needs. Id. at ¶ 5. At intake, Plaintiff had a high blood pressure, 160/100; therefore, DCJ medical staff immediately gave Plaintiff hypertension medication to reduce his blood pressure level. Id. at ¶ 6. While Plaintiff explained that he had a history of high blood pressure, he did not report any cardiovascular issues such as angina, stents, past heart attacks, congestive heart failure, bypass surgery or any other prior history or complaint that is associated with cardiovascular disease. Id. Plaintiff also denied any past history of cerebrovascular disease, chronic obstructive pulmonary disease or emphysema. Id.

281165v.1

Case 1:09-cv-00172-CDL-TQL   Document 59-20   Filed 09/01/10   Page 4 of 21

Additionally, on May 19, 2009, a DCJ Physician's Assistant, Larry Edwards, conducted a medical history and physical assessment of Plaintiff during which Plaintiff complained of dizziness, headaches, problems with his heart, and hypertension in his past. Id. at ¶ 7. Thus, on that same date, Plaintiff started prescriptions for Lasix and Clonidine to address his high blood pressure. Id. Each of Plaintiff's medical concerns is addressed, in turn, as follows:

### 1.    **Enlarged Prostate**

Plaintiff does have an enlarged prostate. Id. at ¶ 9. However, on September 18, 2009, a PSA screening for prostate cancer was performed on Plaintiff, and Plaintiff's PSA was normal which means that there was no evidence of prostate cancer. Id. The DCJ medical staff performed this same test, again, on August 7, 2009, and, once again, the PSA was normal. Id.

### 2.    **Enlarged Heart**

Plaintiff claims to have an enlarged heart. Id. at ¶ 10. However, Plaintiff has received numerous chest x-rays—on May 19, 2009, July 6, 2009 and July 19, 2009—which would reveal an enlarged heart. Id. The DCJ medical staff also performed a CT arteriogram of the pulmonary arteries, which would have revealed the presence of an enlarged heart, and while one x-ray seemed to show that Plaintiff had a slightly enlarged heart, all the other x-rays, as well as the CT arteriogram, showed Plaintiff's heart to be normal size. Id. Thus based on her

281165v.1

medical judgment, Dr. Walden determined that Plaintiff's heart was not enlarged and did not require treatment. Id. Moreover, even if Plaintiff's heart *was* slightly enlarged, it did not require treatment and is not a sign of heart failure. Id.

### 3. High blood pressure

Plaintiff clearly suffered high blood pressure, which is why he was placed on the high blood pressure medications, Lasix and Clonidine, by DCJ medical staff, from the moment he was incarcerated at the DCJ. Id. at ¶ 11. Nonetheless, while incarcerated, Plaintiff did have unexplained episodes of sudden high blood pressure after his blood pressure had been stabilized via medication. Id.

On July 6, 2009, Plaintiff complained of chest pain, right and left flank pain, headaches, and pain in his kidney area. Id. His blood pressure was 170/120 and he was in significant discomfort, so the DCJ medical staff sent Plaintiff to Phoebe Putney Memorial Hospital for evaluation of his chest pain. Id. There, Plaintiff's blood pressure measured 182/103 but the hospital was able to reduce Plaintiff's blood pressure. Id. Additionally, the hospital performed two chest x-rays and a CT of the abdomen and pelvis to screen Plaintiff for other causes of the pain Plaintiff claimed to suffer. Id. All tests were normal. Id.

On July 19, 2009, Plaintiff complained again of chest pain. Id. Plaintiff had a blood pressure of 230/130 and uneven labored breathing. Id. Therefore, in addition to Plaintiff's regular Clonidine prescription, DCJ medical staff provided Plaintiff

281165v.1

with additional Clonidine to lower his blood pressure. Id. At this time, Plaintiff was also receiving Norvasc, Potassium, and Larix to control his blood pressure. Id. Plaintiff was then sent to Phoebe Putney Memorial Hospital Emergency Room to get his blood pressure under control. Id. At arrival, Plaintiff's blood pressure was 216/123. Id. The hospital performed several tests to screen out the possibility that Plaintiff might be having a cardiac event, such as a heart attack. Id. Additionally, the hospital medical professionals performed a CT Scan, several enzyme panels, and several EKGs; all results were normal. Id. Plaintiff had regular cardiac rhythm, normal cardiac rate, normal heart sounds, and no venous distension; furthermore, his vital signs improved over time. Id. Plaintiff stayed overnight at the hospital and was released to the DCJ on July 20, 2009. Id.

In Dr. Walden's medical judgment, the chest pain Plaintiff suffered during these episodes was specifically due to his blood pressure. Id. The most likely cause of the sudden unexplained episodes of high blood pressure was Plaintiff's own non-compliance. Id. DCJ medical staff became suspicious that Plaintiff was not taking the blood pressure medication dispensed to him. Id. Unfortunately, high blood pressure can cause significant damage to internal organs, including the kidneys. Id. During the time Dr. Walden treated Plaintiff, he suffered some decreased kidney function from his high blood pressure. Id. This is why it is so important to maintain adequate control over blood pressure. Id. Periodically, DCJ

medical staff would measure Plaintiff's blood pressure for discrete periods of time and Plaintiff's blood pressure remained under control. Id. During Dr. Walden's time as Plaintiff's primary treating physician, Plaintiff had no other episodes of unexplained high blood pressure. Id.

### 4. Cancerous Cyst on the Liver

As mentioned above, Plaintiff received a CT arteriogram on July 19, 2009. Id. at ¶ 12. On July 6, 2009, an x-ray was performed on Plaintiff to address his complaints of unrelenting flank pain. Id. The x-ray revealed basilar infiltrates but by July 19, 2009, these infiltrates had largely cleared, which meant that they were of no concern. Id. However, the CT arteriogram identified a hemangioma in Plaintiff's liver, and apparently Plaintiff is concerned this hemangioma is cancerous. Id. Hemangiomas are *not* cancerous. Id. They are an area of poorly formed blood vessels in the liver and are benign; furthermore, except in very limited circumstances, which do not exist in Plaintiff's situation, hemangiomas do not require treatment. Id.

### 5. Cancerous Cyst on the Kidney

Plaintiff was under the care of an outside urologist, Dr. Ajayi, while Dr. Walden was treating Plaintiff at the DCJ for hematuria, blood in urine. Id. at ¶ 13. On July 22, 2009, in an attempt to track down the cause of Plaintiff's flank pain and the hematuria, Dr. Walden referred Plaintiff offsite to receive a renal

7

ultrasound to evaluate his kidneys Id. The kidneys were of normal size and did not have masses, stones or hydronephrosis (water on the kidneys). Id. A simple small cyst was identified on the kidney. Id. Cysts are not cancerous. Id. This is a determination that is within the expert purview of the radiologist. Id. The cyst did not require a biopsy to be determined to be non-cancerous.  Id.

Notably, the renal scan did identify a finger-like projection in the lumen of the bladder. Id. This could have potentially been cancer, and Dr. Walden referred Plaintiff to his outside urologist with the results of the renal ultrasound.  Id.  A CT scan of the abdomen and pelvis was ordered as well as a cystoscopy and bladder biopsy.  Id.  On August 12, 2009, Dr. Ajayi performed the tests which revealed no issues with his liver (aside from the hemagiomas), gall bladder, spleen, adrenal glands or kidneys. Id. The urinary bladder and rectum were normal ,and there was no evidence of acute abdominal or pelvis pathology or inflammatory bowel disease.  Id.  On August 19, 2009, Dr. Ajayi performed a bladder biopsy and cystoscopy, and it was determined that the hematuria was caused by a urethral stricture, which is a benign narrowing of the urethra. Id. The finger-like projection was biopsied and is not cancerous. Id.

### 6. Lower back and left knee pain

On August 26, 2009, Dr. Walden ordered a lumbar spine x-ray bi-view to address Plaintiff''s complaints of lower back pain. Id. at ¶ 14. The x-rays revealed

facet arthropathy and degenerative changes at the L5-S1 level (lower back). Id. Additionally, the sacroiliac joints were normal. Id. This is a typical result of aging and does not require surgical intervention. Id. Instead, Dr. Walden prescribed conservative treatment and pain medication. Id.

On August 26, 2009, Dr. Walden also ordered x-rays of the right and left knee. Id. The results of the x-rays were unremarkable. Id. In other words, there were no overt signs of acute injury or process. Id.  Therefore, Dr. Walden provided a knee brace to the Plaintiff, on September 22, 2009. Id.

### 7.    Left Flank Pain

Plaintiff repetitively complained of a left flank pain. Id. at ¶ 15. As discussed above, Dr. Walden ordered numerous tests to identify the etiology of this left flank pain, and made the referral to Dr. Ajayi, the urologist. Id. All the results were normal. Id. In addition, on December 4, 2009, Dr. Walden ordered a consultation for Plaintiff for abdominal pain examination and a colonoscopy with a GI specialist. Id. The colonoscopy was arranged at Phoebe Putney Memorial Hospital for December 16, 2009. Id. On December 15, 2009, Plaintiff was sent to have a colonoscopy with polypectomy to rule out colon lesions to the left side of the abdomen and there were colon polyps, which are benign.  Id.  There is no evidence of any lesions or other issues. Id.

In addition, while Plaintiff was admitted to Phoebe Putney Memorial Hospital on July 6, 2009, the hospital medical professionals also searched for the cause of the flank pain. Id. Apart from the high blood pressure, the emergency room did not identify any other possible etiology for this flank pain. Id. The emergency room did conduct a CT of the abdomen and pelvis, and everything was determined to be normal and no apparent cause for the flank pain was found. Id. A chest x-ray (2 views) was also performed which was also normal. Id.

In December of 2009, Dr. Walden stopped treating any inmates at DCJ, including Plaintiff. Id. at ¶ 16.

B.    Plaintiff's Failure to Exhaust the DCJ's Grievance Process:

At all time relevant to Plaintiff's Complaint, Lieutenant Jeffrey Lance Montgerard was the Jail Administrative Supervisor of the DCJ, and he personally handled all medical grievances filed at DCJ. (Ex. 2, Affidavit of Montgerard at ¶¶ 2-3.

Pursuant to the Dougherty County Sheriff's Office Standard Operating Policy and Procedure, if an inmate has a grievance, and the pod officer cannot resolve the complaint and the inmate wishes to pursue the complaint, the inmate will be instructed to complete an Inmate Grievance Form which will be forwarded to the Grievance Officer. Id. at ¶ 4.

281165v.1

As the Jail Administrative Supervisor, Lt. Montgerard was the Grievance Officer for DCJ. Id. at ¶ 5. After receiving a grievance, Lt. Montgerard reviewed the complaint and made every reasonable effort to resolve it. Id. Lt. Montgerard noted his response to the complaint on the grievance form and forwarded it to the inmate and if the inmate was not satisfied with the response and wanted to appeal it, it will be noted on the form, along with the inmate's signature and forwarded to the Jail Director. Id. The Jail Director would then review the complaint and make every reasonable attempt to resolve it. Id. The Jail Director would note his/her response to the complaint on the form and forward it to the inmate. Id. The response of the Jail Director is considered final. Id. The complete grievance form would be forwarded to the Grievance Officer. Id.

Plaintiff filed two such grievances. Id. at ¶ 7. On November 15, 2009, Plaintiff Wimberly filed a medical grievance. Id. at ¶ 8. Lt. Montgerard responded to this grievance stating: "[y]ou are being seen by and treated by PHS staff members. Your medical needs are being addressed. No further action is required. This matter is closed." Id. Lt. Montgerard signed this grievance response; however, Plaintiff did not indicate, on this form, that he was dissatisfied with Lt. Montgerard's response and that he wanted to appeal the adverse determination. Id. Thus, because Plaintiff did not appeal the Grievance Officer's decision, Plaintiff did not complete the full grievance appeals process. Id.

On March 19, 2010, Plaintiff Wimberly filed another medical grievance. <u>Id.</u> at ¶ 9.  Lt. Montgerard responded to this grievance stating, "[y]ou are being treated in accordance with the Doctor's guidelines. If you feel you are having problems then you can fill out a sick call and request to see medical." <u>Id.</u> Lt. Montgerard signed this grievance response. <u>Id.</u>  Plaintiff Wimberly did not indicate on this form that he dissatisfied with Lt. Montgerard's response and that he wanted to appeal the adverse determination. Thus, because Plaintiff did not appeal the Grivance Officer's decision, Plaintiff did not complete the full grievance appeals process. <u>Id.</u> Plaintiff did not appeal any adverse determination of either of his grievances. <u>Id.</u> at ¶ 10. Thus, a final determination was never made on either grievance.

## III.  SUMMARY JUDGMENT SHOULD BE GRANTED TO PHS DEFENDANTS

### A.    Standard for a Motion for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying [competent

evidence]… which it believes demonstrates the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

**B.    Plaintiff Has Failed To Demonstrate That Defendant Was Deliberately Indifferent To His Serious Medical Needs.**

In 1976, the United States Supreme Court first recognized a cause of action under 42 U.S.C. § 1983 for failure to attend to an inmate's serious illness or injury:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how

> evidenced, deliberate indifference to a prisoner's serious
> illness or injury states a cause of action under § 1983.

(Citation and footnotes omitted).  Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976).

Thus, an Eighth Amendment violation is established where there is evidence

of a serious medical need; and the defendant's response to that need amounted to

deliberate indifference.   Id.   In this case, PHS Defendants were not ever

deliberately indifferent to any of Plaintiff's medical needs.

In Farmer v. Brennan, 511, U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d

811 (1994), the United States Supreme Court defined the test for determining

deliberate indifference: 1) a prison official must know of and disregard an

excessive risk to inmate health or safety; and 2) the official must, both, be aware of

facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference.  Thus, a prison official may be

"deliberately indifferent" so as to give rise to a § 1983 action only if the official

intentionally denies or delays a prisoner's access to medical care and such conduct

results in substantial harm. See Estelle, supra at 104, 97 S.Ct. 285; Brown v.

Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990). However, even if a prison official

knew of a substantial risk to inmate health or safety, the official may be relieved

from liability if the official responded reasonably to the risk, even if the harm

ultimately was not avoided.  Farmer, supra at 844, 847, 114 S.Ct. 1970.

281165v.1

In the Eleventh Circuit, the deliberate indifference test has been refined to three prongs; first, the Plaintiff must demonstrate that Defendant knew of a risk of serious harm; second, that Defendant disregarded the risk; and, third, that Defendant's actions amounted to more than gross negligence.  Andujar, 486 F.3d at 1203-04.  Plaintiff cannot succeed on any of these three prongs.

As evidenced by Plaintiff's medical records which are attached to Dr. Walden's affidavit, Plaintiff has received regular medical care for all of his medical needs during the period relevant to this Complaint. (Ex. 1). As exhibited in Part 1 of the lengthy "Factual Background" presented above, each and every one of Plaintiff's alleged conditions and ailments were evaluated and tested by both DCJ medical staff and through the DCJ medical staff's referrals to outside physicians and hospitals. When necessary, Plaintiff's medical conditions were treated; thus, Plaintiff's claims that his conditions or ailments were left untreated are wholly unfounded and Plaintiff has failed to provide any evidence demonstrating inadequate medical care by PHS Defendants. Furthermore, Plaintiff has failed to show that PHS Defendants disregarded any risks of serious harm to Plaintiff's health, and Plaintiff has wholly failed to show that PHS Defendants acted with any negligence, at all, let alone gross negligence.

281165v.1

C.      **Plaintiff Failed to Grieve His Issues as Required by The Prison Litigation Reform Act, 42 U. S. C. § 1997e(a)**

According to the grievance policy at DCJ, as described in Part 2 of the "Factual Background" above, DCJ has a two-prong grievance process. First, the inmate completes a grievance form and that grievance form is delivered to and answered by the Grievance Officer. Second, if the inmate is not satisfied with the Grievance Officer's response, the inmate can appeal the grievance, and that grievance appeal will be sent to the Jail Director.  The Jail Director reviews the grievance and the Jail Director's response is considered <u>final</u>.

Plaintiff filed two grievances with the Grievance Officer at DCJ. They were both denied and while Plaintiff could have appealed either of these adverse determinations, he did not appeal either grievance response.  There is no record of an appeal from Plaintiff's grievances, and the appeal option on each grievance form was not checked.

42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act provides: "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." <u>Goebert v. Lee County,</u> 510 F.3d 1312, 1322 (11th Cir. 2007).  This is a mandatory requirement; therefore, the inmate <u>must</u> exhaust all available remedies.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006)(emphasis supplied).  An

16

inmate has properly exhausted all available remedies when the inmate has "used all steps that the [prison] holds out, and doing so *properly* so that the [prison] addresses the issues on the merits."  Id. at 90, 92 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)(emphasis in original).).

In this case, Plaintiff did not properly exhaust his administrative remedies. Plaintiff grieved on two separate occasions, but never appealed either adverse determination. Therefore, Plaintiff did not use all the steps held out by DCJ in its official grievance process.  Pritchard v. Anderson, 2007 WL 1035140 * 3 (S.D.Ga. Apr. 3, 2007)(holding that the inmate had not failed to properly exhaust his administrative remedies where he had not yet appealed his grievance and was in the middle of the grievance process.); Brook v. Donald, 2008 WL 623204 * 3 (M.D.Ga. 2008)("For an inmate to fully exhaust his administrative remedies, therefore, he must complete all three steps of the grievance procedure, including appeal.") This Plaintiff did not properly exhaust his administrative remedies so all his claims fail on this basis

### D.    Prison Health Services, Inc. Did Not Violate Plaintiff's Constitutional Rights.

PHS is a private corporation who has contracted with DCJ to provide health care services to inmates.  While Section 1983 does sanction claims for deliberate indifference to the medical needs of incarcerated individuals, such claims may be brought only against an entity considered to be a "person" under the statute.   A

17

private entity has been recognized to be a potentially liable "person" only under limited circumstances, and those limited circumstances are not present here.   PHS may be liable under § 1983 only if PHS adopted a policy or custom that deprived Plaintiff of his constitutional rights.  Monell v. Department of Social Servs. of New York, 436 U.S. 658 (1978); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). See Cook v. Sheriff of Monroe County, 402 F.3d 1092, 1116 (11th Cir. 2005)("Thus, only when a 'policy or custom' of the municipality inflicts the injury does Section 1983 liability exist.").

In Plaintiff's Complaint, Plaintiff failed to allege that PHS maintains any customs, policies, or procedures that violated Plaintiff's constitutional rights. Plaintiff was required to come forward with evidence that the alleged constitutional violations that he suffered were the result of some policy, procedure, or custom of PHS.  Because Plaintiff has failed to do so, summary judgment should be granted to PHS.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted.

This 1st day of September, 2010.

**NALL & MILLER, LLP**

**By:**   */s/ Lavleen K. Sidhu*
      **ALEXIA R. RONEY**
      Georgia Bar No. 581777
      **LAVLEEN K. SIDHU**
      Georgia Bar No. 940616

   **ATTORNEYS FOR PHS
   DEFENDANTS**

North Tower, Suite 1500
235 Peachtree Street, N.E.
Atlanta, Georgia   30303-1401
Phone:  404/522-2200
Facsimile:  404/522-2208
E-Mail: aroney@nallmiller.com
      lsidhu@nallmiller.com

281165v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| **HENRY JAMES WIMBERLY, JR.**<br><br>**PLAINTIFF,**<br><br>**V.**<br><br>**STATE OF GEORGIA, DOUGHERTY COUNTY JAIL, LT. DEAN F. GORE, LT. ERIC MILLER, SHERIFF SPROUL, PRISON HEALTH SERVICES INC., MAJOR DAN HAGGERTY, DR. LINDA WALDEN, PRISON HEALTH SERVICES**<br><br>**DEFENDANTS.** | **CIVIL ACTION FILE NO.: 1:09-cv-00172-WLS-TQL** |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of September, 2010, I electronically filed

**BRIEF IN SUPPORT OF PHS DEFENDANTS' MOTION FOR SUMMARY**

**JUDGMENT** with the Clerk of Court using the CM/ECF system. Non-CM/ECF

system parties will be notified via United States Postal Service as follows:

Henry James Wimberly, Jr.
2360 Hickory Station Circle
Snellville, GA 30078

281165v.1

**NALL & MILLER, LLP**

**By:**   */s/ Lavleen K. Sidhu*
**ALEXIA R. RONEY**
Georgia Bar No. 581777
**LAVLEEN K. SIDHU**
Georgia Bar No. 940616

*ATTORNEYS FOR PHS*
*DEFENDANTS*

Suite 1500, North Tower
235 Peachtree Street, N.E.
Atlanta, Georgia 30303
Phone:  404-522-2200
Facsimile:  404-522-2208
E-Mail: aroney@nallmiller.com
          lsidhu@nallmiller.com

281165v.1